UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE MIHOLICH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SENIOR LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 21-cv-1123-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motion for Reconsideration filed by Defendant Senior Life Insurance Company (ECF No. 20) and the Motion to Strike Affirmative Defenses filed by Plaintiff Kyle Miholich (ECF No. 21).

**I.   BACKGROUND**

On June 16, 2021, Plaintiff Kyle Miholich filed a Class Action Complaint against Defendant Senior Life Insurance Company, arising from Defendant's alleged violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq*. (ECF No. 1). On September 7, 2021, Plaintiff filed a First Amended Class Action Complaint ("FAC"). (ECF No. 8).

On September 21, 2021, Defendant filed a Motion to Dismiss and/or Strike the FAC (the "Motion to Dismiss") pursuant to Rules 12(b)(1), 12(b)(6), 12(f), and 23 of the Federal Rules of Civil Procedure. (ECF No. 9). On February 10, 2022, the Court issued an Order denying the Motion to Dismiss. (ECF No. 17).

On February 24, 2022, Defendant filed an Answer to the FAC, including twenty-three affirmative defenses to Plaintiff's claims. (ECF No. 18).

On March 10, 2022, Defendant filed the Motion for Reconsideration, requesting reconsideration of the February 10, 2022 Order denying the Motion to Dismiss, or, in the alternative, requesting certification for interlocutory appeal. (ECF No. 20). On March 14, 2022, Plaintiff filed the Motion to Strike Affirmative Defenses. (ECF No. 21). On April 4, 2022, the parties filed Responses in opposition to the respective pending motions. (ECF Nos. 24-25). On April 11, 2022, the parties filed Replies in support of their respective motions. (ECF Nos. 27-28).

## II. MOTION FOR RECONSIDERATION

Defendant contends that "the Court erred by failing to fully consider or address [Defendant's] cited authorities," the allegations, and judicially noticeable evidence. (ECF No. 20-1 at 7). Defendant asserts that the allegations in the FAC do not "support an inference that [Defendant] *actually sent* the text messages," required for pleading direct liability. (*Id.*). Defendant further asserts that the alleged conduct does not fall within the TCPA "where judicially noticeable (and undisputed) facts demonstrate that Plaintiff publicly listed his phone number as his business line and the text messages alleged were plainly intended for and directly related to his business use of that number." (*Id.*).

Plaintiff contends "Defendant has failed to satisfy the requirements for reconsideration under Local Rule 7.1(i), Rule 59(e) and Rule 60(b)." (ECF No. 24 at 12). Plaintiff contends that "[t]he Court's Order accurately reflects the allegations in the FAC which support a plausible inference that Defendant sent the text messages at issue." (*Id.* at 13-14). Plaintiff contends that "Defendant has not argued nor offered any viable basis for

reconsideration" of the Court's determination that Plaintiff alleged and presented sufficient facts to support the existence of an injury in fact. (*Id.* at 15).

"Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *id.*, 229 F.3d at 883). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "Clear error occurs when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

The TCPA prohibits the initiation of telephone solicitations, including text messages, to telephones listed on the National Do-Not-Call Registry. *See* 47 C.F.R. § 64.1200(c) ("No person or entity shall initiate any telephone solicitation to: . . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."). The Federal Communications Commission ("FCC") has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013).

In the February 10, 2022 Order Motion to Dismiss, the Court held that "the FAC's allegations support an inference that Defendant sent the text messages to Plaintiff." (ECF No. 17 at 9-10). In support of this determination, the Court considered the FAC in its entirety, including the following allegations:

> The FAC alleges that "Defendant has sent multiple text messages to Plaintiff on his cellular telephone, between approximately April 27, 2021 and May 12,

2021, from the telephone numbers (855) 383-4711 and (855) 354-7422." (ECF No. 8 ¶ 11). The FAC alleges that "[t]he text messages advertised "Financed Leads," contained a link to webinar provided by Defendant, and were "an attempt to promote or sell Defendant's services." (*Id.* ¶¶ 12-14). (*Id.* at 8).

The FAC alleges that Defendant—not a third party—sent the text messages at issue.[1] (*See* ECF No. 8 ¶ 11). Cases that involve allegations that a party other than the defendant initiated the solicitations at issue are thus inapplicable. *See, e.g., Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) ("After reviewing the record, we agree with the district court that '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was Ipsh, a separate provider of text-message based services retained by ESW.'" (alteration in original) (citation omitted)); *Rogers v. Postmates Inc.*, No. 19-cv-05619-TSH, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) ("Direct liability is inapplicable here as the parties do not dispute that the actual sender of the text was not Postmates, but Bird Dog, a third party.").

The FAC contains factual allegations in support of Defendant's direct liability beyond the bare assertion that Defendant sent the text messages. (*See* ECF No. 8 ¶¶ 14-17 (alleging that the text messages advertised "Financed Leads," "linked to a webinar provided by Defendant" that "references [a] 'Senior Life Insurance Opportunity Webinar,'" and were "for the purpose, at least in part, to offer a service in the form of lead financing to prospective contractors," and alleging that Defendant has recently held other webinars "promoting 'LEAD FINANCING.'")). The Court's determination that the factual allegations in the FAC support a plausible inference that Defendant initiated the text messages was not erroneous. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)

---

[1] Defendant contends that "the FAC reflects Plaintiff's uncertainty as to the true identity of the sender by suggesting that unnamed 'agents' of Defendant may have sent the alleged text messages." (ECF No. 20-1 at 12). However, the allegation that Defendant sent the solicitations "either directly or through its agents," (*id.* ¶ 32), is contained in the section of the FAC discussing class-wide allegations, not the allegations concerning Plaintiff individually.

("Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].").

The do-not-call provisions of the TCPA protect "residential telephone subscribers," not businesses. 47 C.F.R. § 64.1200(c); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers . . . .'" (quoting S. Rep. No. 102-178, at 1 (1991))). "To the extent that some business numbers have been inadvertently registered on the national registry, calls made to such numbers will not be considered violations of [the TCPA]." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788, 3793 (2005).

The Court considered the evidence presented by the parties regarding the use and nature of Plaintiff's cellular telephone. (*See* ECF No. 17 at 7 ("Defendant submits evidence establishing that Plaintiff's telephone number is listed as the 'Business Phone' number for Defendant's insurance business on the California Department of Insurance licensing database. Plaintiff responds by submitting a Declaration in support of his Opposition, which states that '[t]he telephone number ending [in] 5823 is my personal cellular telephone number, which I use to make and receive a variety of calls, including but not limited to personal calls with family members and friends.'") (citations omitted)). Determining whether a wireless subscriber is a residential subscriber is "fact intensive," *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14039 (2003), and requires case-by-case review for instances of mixed business/residential use, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. at 3793 (discussing "home-based businesses"). The Court held that it was "unable to conclude as a matter of law that Plaintiff was not a residential telephone subscriber covered by the TCPA." (ECF No. 17 at 7).

The Court's conclusion is consistent with caselaw in this circuit. *See, e.g., Trim v. Mayvenn, Inc.*, No. 20-cv-03917-MMC, 2022 WL 1016663, at *4 (N.D. Cal. Apr. 5, 2022) ("Courts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes. [W]here there is evidence supporting both the contention that the [p]laintiff's phone number was a residential number and that the phone number was a business number, however, a disputed issue of material fact . . . may exist." (quotations and citations omitted) (alterations in original)); *Gross v. GG Homes, Inc.*, No. 21-cv-271-DMS-BGS, 2021 WL 2863623, at *4 (S.D. Cal. July 8, 2021) (rejecting the contention that "calls to phone numbers used partially for business reasons cannot generate a constitutionally cognizable injury" under the TCPA); *Clements v. Porch.com, Inc.*, No. 20-cv-00003-SLG, 2020 WL 5739591, at *5 (D. Alaska Sept. 24, 2020) ("[T]he FCC regulations implementing Section 227(c) do not categorically exclude all numbers used for any business purpose and the FCC has declined to exempt phone numbers used by home-based businesses from the do-not-call rules.").

Defendant relies on *Chennette v. Porch.com, Inc.*, 484 F. Supp. 3d 912 (D. Idaho 2020), which granted dismissal on the basis that the telephone at issue was used for business purposes. However, on reconsideration, the *Chennette* court acknowledged that its determination that the plaintiffs' "phone numbers were business numbers" rested on the fact that the plaintiffs pleaded that the phones were used in conducting business and offered no facts "supporting the assertion that Plaintiffs' numbers are residential." *Chennette v. Porch.com, Inc.*, No. 20-cv-00201-SRB, 2020 WL 9078129, at *6 (D. Idaho Nov. 2, 2020) (denying reconsideration of the court's earlier decision to grant the motion to dismiss). In contrast, Plaintiff in this case presents facts supporting the residential nature of his cellular telephone sufficient at this stage to establish a material dispute as to whether plaintiff is a residential telephone subscriber.

Defendant's assertion that the text messages targeted the business use of Plaintiff's cellular telephone does not change this result. The analysis of whether a subscriber is a

residential telephone subscriber focuses on the nature of the subscriber's use of the telephone, not an individual caller's purpose in contacting the subscriber. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. at 14038 (focusing on the subscriber's use of a telephone in discussing the reach of the TCPA). The Court "is unable to conclude as a matter of law that Plaintiff was not a residential telephone subscriber covered by the TCPA based on the limited evidence presented by the parties." (ECF No. 17 at 7). The Motion for Reconsideration is denied.

### III. REQUEST FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

In the Motion for Reconsideration, Defendant states: "[s]hould the Court disagree that reconsideration is appropriate, [Defendant] respectfully requests, in the alternative, that the Court certify its [February 10, 2022] Order for interlocutory appeal to the Ninth Circuit pursuant to 28 U.S.C. § 1292(b)." (ECF No. 20-1 at 8). Defendant contends that both questions raised in its motion for reconsideration are "controlling questions of law that could materially affect the outcome of this litigation" and subject to "substantial differences of opinion amongst courts." (*Id.*). Defendant contends that "an immediate appeal would advance the ultimate termination of this case" because a decision in Defendant's favor would result in dismissal of this case "in its entirety." (*Id.* at 8-9).

Plaintiff contends that the issues raised by Defendant involve "fact intensive inquiries that are not suitable for appeal . . . and cannot be easily decided by the Ninth Circuit." (ECF No. 24 at 21). Plaintiff contends that "an interlocutory appeal would delay the progress of this litigation because certification of the Court's decision would effectively stay all case deadlines and discovery to allow the appellate court to review issues that Defendant is likely to raise again in a future motion" or opposition. (*Id.* at 28).

A district court may certify an otherwise non-appealable order for review by an appellate court when three conditions are met: (1) the order involves a "controlling question of law"; (2) there is "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three criteria must be met in order for a district court to certify an

issue for interlocutory appeal. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002); *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959) ("§ 1292(b) is to be applied sparingly and only in exceptional cases").

"A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Or., Inc. v. Int'l Longshore and Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)). "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (quotation omitted).

The first question Defendant seeks the Court to certify is "the legal standard for pleading direct liability under the TCPA . . . ." (ECF No. 20 at 20). However, Defendant does not dispute the applicability of the legal principles employed by the Court in its analysis of direct liability. Defendant instead challenges the Court's application of the law to the facts alleged in the FAC, asserting that the facts alleged do not support a plausible inference that Defendant sent the text messages. However, the application of established law to a particular set of facts is not a "controlling question of law" for purposes of § 1292(b). Likewise, "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633.

The second question Defendant seeks the Court to certify is "whether a plaintiff that publishes their phone number in connection with a business and receives text messages directed to the business use of that number has standing as a 'residential telephone subscriber' under the TCPA's DNC provisions." (ECF No. 20 at 20). The position that any

business use of a cellular telephone disqualifies the subscriber from the protection of the TCPA, even where the subscriber has offered competing evidence of residential use, is not supported by caselaw in this circuit or any appellate decision nationwide. *See* Section II of this Order; *see also Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377, 2018 WL 5303973, at *2 (S.D. Ohio Oct. 25, 2018) (collecting cases nationwide). To the extent that Defendant's objection rests on the specific evidence presented by the parties in this case, certification is inappropriate because Defendant does not present a pure question of law. The request for certification for interlocutory appeal is denied.

## IV. MOTION TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure provides that "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (alteration in original) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense. *See Conley v. Gibson*, 355 U.S. 41 (1957); *see also Simmons*, 609 F.3d at 1023.

Motions to strike are generally disfavored and should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *See, e.g., Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 180, 1190 (S.D. Cal. 2010). Courts often require that the moving party make a showing of prejudice before granting a 12(f) motion to strike. *See, e.g., Fantasy*, 984 F.2d at 1528. The decision to grant or deny a motion to strike under Rule 12(f) is within the discretion of the court. *See id*.
///

### A. Eighth Affirmative Defense: Good Faith

Plaintiff contends that Defendant's good faith defense should be stricken with prejudice because the TCPA is a strict liability statute that precludes consideration of good faith. Plaintiff further contends that Plaintiff would be prejudiced if any of the challenged affirmative defenses are not stricken "because it would require unnecessary written discovery, as well as unnecessary topics of oral examination" and would lead to confusion. (ECF No. 21-1 at 10).

Defendant contends that its good faith defense should not be stricken because "at least two courts—including one in this district—have expressly recognized a 'good faith' defense to the TCPA." (ECF No. 25 at 7). Defendant further contends that "Plaintiff has not shown that he will suffer any prejudice if [Defendant's] Affirmative Defenses are not stricken" and relies on "conclusory statements . . . insufficient to demonstrate prejudice under Rule 12(f)." (*Id.* at 13-14).

The Eighth Affirmative Defense ("Good Faith") provides: "At all times relevant to the matters alleged in the FAC, Defendant acted in good faith, reasonably and without any actual or constructive knowledge of any alleged breach of any legal duty owed to Plaintiff, or any other alleged wrong done to Plaintiff." (ECF No. 18 at 11). The Court of Appeals has not addressed the issue of whether good faith is a defense to an alleged TCPA violation, and the FCC has only addressed the issue in the context of autodialed or prerecorded calls, not calls to phones listed on the do-not-call registry. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. at 14117-18. There is limited authority suggesting that good faith may be applicable in TCPA litigation. *See Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12-cv-1721-BEN (WVG), 2014 WL 1744136, at *12 (S.D. Cal. Apr. 30, 2014) (concluding that good faith could be a defense where a debt collector contacted a debtor in reliance on the creditor's assertion that the debtor had consented to be contacted); *Labau v. Cellco P'ship*, No. 2:13-cv-00844-MCE-EFB, 2014 WL 2987767, at *2 (E.D. Cal. July 1, 2014) (concluding that good faith could be a defense where a defendant contacted the plaintiff after her brother-in-law

misrepresented to the defendant that the plaintiff's number was his own). Given this legal authority and the lack of factual development in this case, the Court declines to conclude that good faith is inapplicable as a matter of law at this stage in the litigation. Plaintiff's request that the Court strike Defendant's Eighth Affirmative Defense is denied.

### B. Tenth Defense: Inadequate Joinder

Plaintiff contends that Defendant's "10th Affirmative Defense should be stricken with prejudice" in whole or in part "because it has been waived due to [Defendant's] failure to raise it in its initial Motion to Dismiss . . . ." (ECF No. 21-1 at 8). Plaintiff contends that the defense is immaterial because "the allegations in the FAC relate to the direct liability of [Defendant]" and that improper joinder does not bar liability. (ECF No 27 at 6).

Defendant contends that a challenge for failure to join a party under Federal Rule of Civil Procedure 12(b)(7) "would not have been appropriate here based upon the state of the pleadings, which solely allege a direct TCPA liability theory against [Defendant]." (ECF No. 25 at 11). Defendant contends that "[t]he failure to join a party required by Rule 19(b) is **_an unwaivable defense_**" and "where Rule 19(a) comes into play, the Court may raise the absence of 'necessary parties sua sponte.'" (*Id.* (quotations omitted) (alteration in original)). Defendant contends that striking the defense at this stage is premature and that the defense should not be stricken on a technical basis.

The Tenth Affirmative Defense ("Inadequate Joinder") provides:

> Plaintiff's claims fail due to his failure to join necessary or indispensable parties in this action, including but not limited to the person(s) or entity (or entities) who sent the alleged text messages in purported violation of the TCPA and/or acted on such person's or entity's behalf in doing so.

(ECF No. 18 at 12). A necessary party is a party that must be joined under Rule 19(a) of the Federal Rules of Civil Procedure so long as the party is "subject to service of process and . . . will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a). In contrast, an indispensable party is a necessary party whose absence requires dismissal of the action under Rule 19(b). *See Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498-500 (9th Cir. 1991). An assertion that there has been a "failure

to join necessary parties is waived if objection is not made in defendant's first responsive pleading . . . ." *Citibank N.A. v. Oxford Prop. & Fin. Ltd.*, 688 F.2d 1259, 1262 n.4 (9th Cir. 1982). However, an assertion that there has been a failure to join indispensable parties may be raised for the first time at a later point in the proceedings. *See id.*; Fed. R. Civ. P. 12(h)(2). Further, "[t]he absence of 'necessary' parties may be raised by reviewing courts *sua sponte* . . . at any stage in the proceeding." *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911-12 (9th Cir. 1991).

The Court cannot conclude at this stage in the proceedings that Defendant's inadequate joinder defense has no possible bearing on the subject matter of the litigation because it has been waived. The Court further declines to grant the Motion to Strike based on Plaintiff's position that the defense is not a bar to liability, and thus, not technically a proper affirmative defense. *See San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 861 (S.D. Cal. 2018) ("[D]istrict courts within this circuit have held that denials that are improperly pled as defenses should not be stricken on that basis alone."); *Savage v. Citibank N.A.*, No. 14-cv-03633-BLF, 2015 WL 4880858, at *4 (N.D. Cal. Aug. 14, 2015) ("While the failure to state a claim or the failure to join an indispensable party may not technically be *affirmative* defenses, the Court perceives no good reason to strike these otherwise permissible (and self-explanatory) defenses on sematic grounds."). Plaintiff's request that the Court strike Defendant's Tenth Affirmative Defense is denied.

**C. Sixteenth Defense: Failure to Mitigate**

Plaintiff contends that the failure to mitigate defense should be stricken with prejudice "because failure to mitigate is immaterial to the TCPA . . . ." (ECF No. 21-1 at 6). Plaintiff contends that "Plaintiff's pleading makes it clear that Plaintiff does not seek any actual damages and has even stated as such in its moving papers." (ECF No. 27 at 5). Plaintiff contends that the defense, as pleaded, is "boilerplate" and "is not sufficient to put Plaintiff on fair notice . . . ." (*Id.* at 6).

Defendant contends that an election of statutory damages does not invalidate a failure to mitigate defense, particularly because "the pleadings leave open the possibility

for actual damages." (ECF No. 25 at 9). Defendant contends that its defense provides fair notice to Plaintiff.

The Sixteenth Affirmative Defense ("Failure to Mitigate") provides: "Plaintiff is not entitled to relief because, if Plaintiff has been damaged, Plaintiff has failed to mitigate his damages, and therefore any recovery against Defendant is barred or should be reduced accordingly." (ECF No. 18 at 14). Statutory damages are the only form of damages expressly requested in the Prayer for Relief contained in the FAC, and Plaintiff disclaims any request for actual damages in his Reply. (*See* ECF No. 27 at 5 ("Plaintiff does not seek any actual damages . . . ."); *see also Springer v. Fair Isaac Corp.*, No. 14-CV-02238-TLN-AC, 2015 WL 7188234, at *5 (E.D. Cal. Aug. 14, 2015) (acknowledging that the plaintiff clarified in his reply that he did not seek actual damages)). The TCPA does not impose a duty on plaintiffs to mitigate statutory damages. *Cf. Malibu Media, LLC v. Peterson*, No. 16-CV-786 JLS (NLS), 2017 WL 1550091, at *6 (S.D. Cal. May 1, 2017) (declining to strike failure to mitigate defense for copyright infringement claim because actual damages are relevant to determining statutory damages under that act); *Kohler v. Staples the Off. Superstore, LLC*, 291 F.R.D. 464, 469 (S.D. Cal. 2013) (discussing motion to strike where complaint expressly requested "actual" damages). The defense of failure to mitigate concerns Plaintiff's conduct in response to the injury alleged in the FAC. Discovery on this issue likely will not be duplicative of other discovery in this case and would thus require unnecessary expenditure of time and expense. Plaintiff's request that the Court strike Defendant's Sixteenth Affirmative Defense is granted.

**D. Twenty-Third Defense: Reservation of Defenses**

Plaintiff contends that "Affirmative Defense No. 23 should be stricken with prejudice because reservation of rights (or reservation of defenses) [ ] is not actually an affirmative defense." (ECF No. 21-1 at 9). Plaintiff contends that "any attempt to add a defense must satisfy the applicable Federal Rules" and that "this Court has routinely stricken this type of reservation of rights defense." (*Id.* at 9-10).

Defendant "acknowledges that it may be required to seek leave to amend its Answer to assert additional defenses in accordance with the Federal Rules of Civil Procedure" but contends that the defense should not be stricken because "Plaintiff has not shown any prejudice that would result if [Defendant's] reservation of defenses were to remain." (ECF No. 25 at 13).

The Twenty-Third Affirmative Defense ("Reservation of Defenses") provides:

> Certain additional affirmative and other defenses to the FAC and to the purported claims for relief stated therein may be available to Defendant. However, these additional defenses may require discovery before they can be properly alleged as certain information is in the hands of Plaintiff and/or third parties. Thus, Defendant reserves the right to assert other separate and additional defenses, if and when they become appropriate in this action and to the extent allowed.

(ECF No. 18 at 16). This defense is improper to the extent that it relieves Defendant of its future obligations to comply with the Federal Rules of Civil Procedure in amending pleadings and asserting new affirmative defenses. Otherwise, the reservation of rights is superfluous and "immaterial." Fed. R. Civ. P. 12(f). Plaintiff's request that the Court strike Defendant's Twenty-Third Affirmative Defense is granted.

## V. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Reconsideration filed by Defendant Senior Life Insurance Company (ECF No. 20) is denied. Defendant's requests for reconsideration and certification for interlocutory appeal are denied.

///

///

///

///

IT IS FURTHER ORDERED that the Motion to Strike Affirmative Defenses filed by Plaintiff Kyle Miholich (ECF No. 21) is granted in part and denied in part. The motion is granted as to the request to strike Defendant's Sixteenth Affirmative Defense ("Failure to Mitigate") and Twenty-Third Affirmative Defense ("Reservation of Defenses"), and is otherwise denied. Defendant's Sixteenth and Twenty-Third Affirmative Defenses are stricken from the Answer.

Dated: May 12, 2022

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

15

21-cv-1123-WQH-AGS